UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EDRYCK DANTE MOONEY | ) | |
| | ) | |
| v. | ) | No. 3:11-00164 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct A Sentence By A Person In Federal Custody (Docket No. 1), filed by the Movant/Petitioner (hereinafter "Petitioner"). The Government has filed a Response to the Motion. (Docket No. 25), and the Petitioner has filed a Reply (Docket No. 35).

The Court has reviewed the pleadings and briefs filed by both parties, the record of Petitioner's underlying conviction, and the entire record in this case. For the reasons set forth below, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with various crimes, including conspiracy to make or possess a Molotov Cocktail, in violation of 18 U.S.C. § 371 (Counts One, Six, Fourteen and Twenty-One); illegally making a Molotov Cocktail, in violation of 26 U.S.C. § 5861(f) (Counts Two, Seven, Fifteen and Twenty-Two); possession of a Molotov Cocktail, in violation of 26 U.S.C. § 5861(d) (Counts Three, Eight, Sixteen, and Twenty-Three); felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Counts Four, Nine, Ten, Seventeen, Eighteen, Twenty-Four, and Twenty-Six); and using or carrying a firearm during and

in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Five, Twelve, Thirteen, Nineteen, Twenty, and Twenty-Five). (Second Superseding Indictment (Docket No. 116 in Case No. 3:02-00074)). Kenneth Matthew Thornton, Daraphone Vixaisack, James Andrew Byrd, and Ricky Eugene Pearson were named as Co-Defendants. (Id.) Prior to trial, the Government dismissed the charges against Co-Defendant Pearson. (Docket Nos. 157, 158 in Case No. 3:02-00074). Co-Defendants Thornton, Vixaisack and Byrd pled guilty pursuant to plea agreements with the Government. (Docket Nos. 162, 165 in Case No. 3:02-00074).

At the conclusion of a week-long trial, a jury convicted the Petitioner on all counts, except Counts Ten, Thirteen, Eighteen and Twenty. (Docket Nos. 179, 181 in Case No. 3:02-00074). At the subsequent sentencing hearing, the Court sentenced the Petitioner to a total term of three life sentences plus 570 months of imprisonment. (Docket Nos. 210, 211, 237 in Case No. 3:02-00074).

On appeal of Petitioner's convictions and sentence, the Sixth Circuit affirmed. (Docket No. 238 in Case No. 3:02-00074). The Petitioner filed a petitioner for writ of certiorari to the United States Supreme Court, which was denied on October 3, 2005. Mooney v. United States, 546 U.S. 829, 126 S.Ct. 46, 163 L.Ed.2d 78 (2005).

In its decision, the Sixth Circuit presented the relevant facts as follows:

> On March 2, 2002, Mooney attended a party at the home of Jonathan Jones in Nashville, Tennessee. Discovering that he had accidentally left his hat there, Mooney asked a friend, Antonio Davis, to call Jones to tell him they would return to pick it up. Because Jones had been planning to run an errand with a cousin and a friend, he set the cap outside on top of a shovel so Mooney could get his cap during Jones's absence. As chance would have it, Mooney pulled up before Jones and the others had left. Mooney approached Jones, demanding, "Why is my hat outside? Why are you disrespecting me?" JA 174. According to Jones' testimony, Mooney took a swing at Jones and a brief scuffle ensued, though it broke up before anyone was injured.
>
> Upset by the incident, Mooney sought help from a friend, Kenneth Thornton, to

avenge this disrespect, which apparently was particularly stinging because Mooney's red hat represented his gang, the Bloods. On March 3, 2002, Mooney, Thornton, and Daraphone Visiasack (Mooney's girlfriend) discussed a plan to use Molotov cocktails (improvised explosives made by filling a bottle with gasoline and inserting a rag as a fuse) to burn Jones's house. Mooney developed the plan with Thornton and directed the preparation of the explosive. When they arrived at Jones's home, Mooney lit the rag and threw the Molotov cocktail at Jones's house. Jones escaped the burning house but could not continue living there because of the damage.

Before this incident, Mooney had approached Davis (the friend who went with him to pick up the hat) about helping him with this first firebombing, but Davis had refused to get involved. During the evening of March 7, 2002, other individuals affiliated with the Bloods picked up Davis and took him to a hotel. Once there and once they had relieved Davis of his .25 caliber pistol, they accused Davis, a former gang member himself, of telling the police about the Jones firebombing. At the time, one of the individuals was armed with a .38 caliber pistol and another with a .357 caliber pistol. Mooney then arrived at the hotel. Believing that Jones was staying temporarily at the home of his cousin, Gary Henson, Mooney demanded that Davis burn down Henson's house to prove his loyalty. Mooney emphasized this demand by threatening to kill Davis and Davis's mother if he refused. Mooney also helped to create the Molotov cocktail by filling a bottle with gasoline, and he ordered Davis to place a t-shirt halfway into the bottle. One of Mooney's colleagues then dropped Davis off near Henson's house and gave Davis the .38 revolver. Davis, however, did not want to carry out the plan and threw the Molotov cocktail in the driveway, rather than at the house. The next day, the police found a broken bottle and a rag smelling of gasoline in Henson's driveway, and Mooney, checking to verify whether Davis had complied with his instructions, learned that Davis had not carried out the plan.

About two weeks later, on March 23, 2002, Mooney decided to finish what Davis had not. He and two accomplices made two Molotov cocktails, then planned to go to Henson's house, where the accomplices each planned to throw a Molotov cocktail – one at the front of the house, one at the back – while Mooney fired a pistol into the air to scare the occupants. In carrying out this plan, however, they did not succeed in starting a fire. One bottle went through a window in the house but its fire was extinguished before spreading, and the other bottle landed unbroken in the driveway.

On March 29, 2002, Mooney responded to another perceived slight in like fashion. While sitting in a friend's jeep in a parking lot near some condominiums, Mooney left a beer bottle on the sidewalk. A man named Darnell confronted Mooney about the littering because his girlfriend, Charity Holland, had just cleaned up the area. Only words were exchanged at the time, but after Mooney left he resorted to a by-now-familiar plan. Stopping at a gas station, Mooney

3

directed his friend to fill a bottle with gas, then inserted a shoelace as a wick, after
which they drove back to Holland's condominium. After the friend objected that
they should not burn down the house because children lived there, Mooney
decided to burn Holland's car instead. He threw a Molotov cocktail into
Holland's car, which caught fire and which was destroyed before the fire
department could put out the fire.

(Docket No. 238, at 2-4).

### III. Analysis

A. The Petitioner's Claims

Petitioner contends that his convictions should be vacated because: (1) his convictions and sentence under 18 U.S.C. § 924(c) are unlawful under United States v. O'Brien, 130 S.Ct. 2169 (2010); and (2) he received the ineffective assistance of trial counsel.

B. The Section 2255 Remedy/Evidentiary Hearing Not Required.

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

4

v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also conducted the trial, he may rely on his recollections of the trial. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255; Rule 8 of the Rules Governing Section 2255 Proceedings For The United States District Courts; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999); United States v. Busch, 411 Fed. Appx. 872, 2011 WL 559151 (6th Cir. Feb. 17, 2011). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). In addition, no hearing is required if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief. Engelen, supra.

The Court has reviewed all the files, records, transcripts and correspondence filed in the proceeding underlying Petitioner's convictions, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because the record conclusively establishes that Petitioner's allegations, which are not contradicted by the record, indicate that he is not entitled to relief on the issue raised.

C. United States v. O'Brien

Petitioner argues that his convictions in Counts Five, Twelve, Nineteen and Twenty-Five should be vacated because the Court failed to instruct the jury that it must find as an element of

5

the offense that the Petitioner used a "destructive device" in violating 18 U.S.C. § 924(c), as required by United States v. O'Brien, 130 S.Ct. 2169 (2010). The Government argues, on the other hand, that Petitioner's claim is untimely and that O'Brien is not to be applied retroactively. The Government alternatively argues that O'Brien does not require the convictions to be vacated because the Court instructed the jury to make the required finding.

The Court finds it unnecessary to consider the Government's statute of limitations argument because the record indicates that the jury made the finding that was lacking in O'Brien. Section 924(c) provides, in pertinent part, as follows:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
>> (i) be sentenced to a term of imprisonment of not less than 5 years;
>>
>> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>>
>> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
>
> (B) If the firearm possessed by a person convicted of a violation of this subsection--
>
>> (i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or
>>
>> (ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.
>
> (C) In the case of a second or subsequent conviction under this subsection, the

6

person shall--

> (i) be sentenced to a term of imprisonment of not less than 25 years; and
>
> (ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

In Counts Five, Twelve and Twenty-Five of the Second Superseding Indictment, the Petitioner was charged with a violation of Section 924(c) in that he "unlawfully and knowingly used and carried a firearm, to wit: an incendiary device commonly referred to as a Molotov cocktail, which constitutes a destructive device. . . " (Docket No. 116 in Case No. 3:02-00074). In Count Nineteen, the Petitioner was charged with a Section 924(c) violation in that he "unlawfully and knowingly used and carried firearms, to wit: incendiary devices commonly referred to as Molotov cocktails, which constitute destructive devices. . ." (Id.) At sentencing, the Court imposed the 30-year mandatory minimum sentence as to Count Five, required by Subsection 924(c)(1)(B)(ii) for convictions involving a "destructive device," and imposed a life sentence on Counts Twelve, Nineteen, and Twenty-Five, as required by Subsection 924(c)(1)(C)(ii) for subsequent convictions involving a "destructive device." (Docket No. 210 in Case No. 3:02-00074).

In O'Brien, the Supreme Court held that in order to apply the 30-year mandatory minimum sentence for possession of a machine gun, imposed by Section 924(c)(1)(B)(ii), the trial court must require that the jury find that fact – that the "firearm" was a machine gun – as an element of the offense. Section 924(c)(1)(B)(ii), at issue in O'Brien, also imposes the 30-year mandatory minimum sentence for possession of a "destructive device," the "firearm" involved in the Section 924(c) counts in the Petitioner's case. Therefore, applying O'Brien to Petitioner's case would require a jury finding that the Petitioner's Section 924(c) violations involved a

7

"destructive device."

The record of Petitioner's trial indicates that the jury made that finding. The Court advised the jury that in order to find the Petitioner guilty of a violation of Section 924(c), as charged in Counts Five, Twelve, Nineteen and Twenty-Five, it must unanimously find beyond a reasonable doubt that the Petitioner "knowingly used or carried the firearm described in the indictment." (Transcript of Jury Trial, at 784 (Docket No. 236 in Case No. 3:02-00074)). As set forth above, the language of each count in the Second Superseding Indictment alleging a Section 924(c) violation specifically stated that the "firearm" was a "destructive device," i.e. a Molotov Cocktail.[2] Therefore, in finding the Petitioner guilty of these counts, the jury specifically found that the "firearm" used and carried by the Petitioner as to each count was a "destructive device," satisfying the holding in O'Brien. Accordingly, the Court appropriately imposed the statutory sentences for Petitioner's Section 924(c) violations.

D. Ineffective Assistance of Counsel

Petitioner argues that trial counsel initially appointed to his case, First Assistant Public Defender Mariah Wooten, as well as trial counsel who took over his representation prior to trial, Paul Bruno, were ineffective in representing him. Petitioner claims that both Ms. Wooten and Mr. Bruno were ineffective for failing to convey and explain a plea offer to him. Petitioner claims he learned of the plea offer in August, 2010, when he received his criminal file from counsel and reviewed its contents. According to the Petitioner, the Government sent Ms. Wooten the plea offer by letter dated July 15, 2002. The offer, he contends, would have required him to plead guilty to Counts Twelve and Eighteen, charging violations of 18 U.S.C. § 924(c),

---

[2] The Court also defined the terms "firearm" and "destructive device," and instructed the jury that a fully-assembled Molotov cocktail, which was also defined, constitutes a "destructive device." (Id., at 786).

and agree to a 30-year sentence. (Docket No. 2, at 7).

Petitioner also claims that counsel failed to explain to him "the nature of the criminal charges, the probability of being convicted, all the available defense strategies (or lack thereof), or the possible sentences applicable between a guilty plea as opposed to taking the case to trial." (Docket No. 2, at 8). According to the Petitioner, the 30-year plea offer made by the Government "would have been agreeable had the Movant known that he would easily be convicted and sentenced to life imprisonment without parole." (Docket No. 2, at 9). Petitioner claims he was not told a life sentence would be "required and mandatory" upon conviction. (Docket No. 2, at 11).

In his affidavit, Petitioner further states:

> There was mention of the government possibly offering me thirty years and I may have told attorney Bruno I would not take that because I was under the impression that I would get that much time if I went to trial. Also, attorney Bruno told me I had to agree to testify against others and I really did not want to do that but was never given the opportunity to consider the option because I was not provided competent legal advice in terms of the over-all case and sentence exposure.

(Docket No. 2, at 15).

The Government argues that Petitioner's claims are barred by the statute of limitations, and points out Petitioner's statement in his affidavit that he was aware of the plea offer prior to trial.

Section 2255(f) provides as follows:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

    (1) the date on which the judgment of conviction becomes final;

    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

9

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The Petitioner argues, pursuant to Subsection (f)(4), that the one-year limitations period did not begin to run until he discovered the Government's 30-year plea offer in August, 2010 while reviewing his file. Because he filed his claims in this case on February 22, 2011 (Docket No. 1), less than one year later, Petitioner contends that his claims are timely.

Based on the statements made by the Petitioner in his affidavit, however, the Court concludes that Petitioner was aware prior to trial that the Government had made a plea offer of 30 years. Petitioner does not indicate that the document containing the plea offer, which he discovered in August, 2010, contains any information in addition to the 30-year term of imprisonment offered that is essential to his claim. Therefore, the Court concludes that, under Subsection (f)(4), the "facts supporting the claim" – i.e., the Government made a 30-year plea offer – were known to the Petitioner prior to the time he went to trial in 2003. Because Petitioner did not raise his claim relating to the plea offer until filing this case in February, 2011, the claim is barred by the one-year statute of limitations.

Petitioner's other complaints about counsel, including his claim that counsel failed to advise him that he was subject to a term of life imprisonment, could have been brought within one year after the date his judgment of conviction became final. Clearly, Petitioner knew that he had been sentenced to life imprisonment, and any failure of counsel to advise him of that possibility, by the time his judgment of conviction became final in 2005. As Petitioner did not file the claims until February, 2001, they are barred by the one -year statute of limitations.

## IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

                                                          */s/ Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE